322-0440 Naperville Hotel Partners, LLC and Superhost Hospitality, Inc. Appellants v. Liberty Mutual Fire Insurance Co. and Fireman's Fund Insurance Co. Appellees. Thank you. Good afternoon. Good afternoon, Your Honor. Mr. Connor, are you ready to begin? Yes, I am, Your Honor. Good afternoon. Colin Connor on behalf of the appellants. This appeal addresses three key issues and defendant's motions to dismiss. First, the internal statute of limitations does not clearly, definitively, and explicitly begin to run from the beginning of the injury rather than from the end. Second, defendant should have been stopped from asserting their internal statute of limitations defense. And third, Naperville gave adequate notice of its claim. Given the high hurdles that a motion to dismiss must overcome in Illinois law, liberally construing policies in favor of the policyholder, Naperville's reasonable interpretation of the internal statute of limitations should govern. The overall considerations are the policy language and reasonableness. The insurer's policies state that a suit must be brought within two years after the date on which the physical loss or damage occurred. Defendants did not include any words like starts, incepts, or begins in their policy, however. Instead, defendants require a suit within two years after the date when any damage occurred, without regard to when it began. The only decisions interpreted in this language that either party provided to the trial court find that the limitation runs from the conclusion of the loss. And both decisions involve water infiltration like Naperville has experienced. In the Panorama case, for example, the policy required the policyholder to bring suit within one year after a loss occurs. The Washington Supreme Court stated, a plain, ordinary reading of the contract suggests the policyholder must bring an action for coverage within one year subsequent to or succeeding the loss. This must be distinguished from a contract which requires a policyholder to bring a coverage action within 12 months after the inception of the loss. A second directly on point case is Strauss. The policy required that suit be filed within one year after a loss occurs. The Seventh Circuit analyzes the issue the same way as Panorama, stating, after a loss occurs is fundamentally different from after the inception. Inception of the loss clearly and unmistakably means the beginning of damage, while after a loss occurs is ambiguous. Thus, the Seventh Circuit held that the Strausses could have brought their claim at any point up until after the water infiltration damage halt. As the Panorama court stated, the industry knows how to protect itself and knows how to write exclusions and conditions. The Illinois Supreme Court has held a policyholder should be deprived of the benefit of insurance for which he has paid, except for where the terms of the policy clearly, definitely, and explicitly require it, and that is from Midwest Dairy Products. Because the insurers did not clearly, definitely, and explicitly draft their internal statute of limitations to run from the inception of the loss, they do not. Defendant's agent listed the period of exposure on the loss notice form as September 15, 2017 to April 30, 2019. So, damage occurred until at least April 30, 2019. Thus, the statute of limitations did not expire until April 30, 2021. Naperville filed this action on April 26, 2021, before the statute of limitations expired. Counsel, does that mean that since there were events that occurred, like rain events, does that mean that you get to wait until the last rain event that causes an intrusion before you file? Do you do anything to assert your claim? According to the policy language, Your Honor, that's the way it's drafted, that you get to wait until after the conclusion of the loss, and that's the only cases interpreting this language anywhere that we have found in the country, have found that it's at the conclusion of the loss. Counsel, what do you consider the loss? The damage that is done by the water, or each event that it rains over an inch? The cumulative effect of the damage to the hotel is a loss, Your Honor. So, you believe that you could turn the clock back to the beginning, when the defect was first noticed by your client, I think back in 2015? If that was the conclusion of the loss, that's when it could have started. The policy states that you have until two years after the loss occurred, and the loss is a cumulative effect of the damage, which, according to the insurer's own agent, was at least through April 30, 2019. So, the water damage that happened on October of 2017 that was visible to the insured didn't trigger any kind of an obligation to file a claim or file a lawsuit? Not according to the policy language, Your Honor. Policy language, it does not clearly, definitely, and explicitly state that you have to file a claim within two years after the beginning of the loss. Mr. Connor, what does direct damage mean? Direct damage? Your Honor, the direct damage would be damage to the property. Well, is there a difference between direct damage and damage that's flowing from something else that occurred before? I'm not sure, Your Honor. I don't believe that the policy, this portion of the policy, refers to direct damage. I believe it requires suit within I actually have a specific language for each insurer. Liberty Mutual says a suit must be brought within two years after the date on which the physical damage occurred, and Fireman's says suit must be brought within two years after the date on which the direct physical loss or damage occurred. So, they have different languages, but those policy terms are defined in the policy. And defendants have not cited any case supporting their interpretation of the internal statute of limitations. The cases cited by defendants actually show that insurers know how to draft the internal statute of limitations to run from the beginning of the damage and that these insurers simply chose not to. For example, the internal statute of limitations in the foam craft case cited by defendants required that the policyholder file suit within 12 months after discovery of the occurrence. There's no discovery trigger in defendants' policies in their statute of limitations. Also, the internal statute of limitations in DINO, cited by defendants, required that the policyholder file suit within one year after the inception of the loss. But defendants here chose not to use comparable inception language. And as Panorama and Strauss state, there has to be a difference between the use of inception and after the loss. Defendants' internal statute of limitations must be interpreted in favor of Naperville's equally reasonable construction that the statute of limitations runs from the end of the damage, which was less than two years before Naperville filed suit. This court should reverse the dismissal of Naperville's case as Naperville complied with the internal statute of limitations. The trial court also erred in determining that defendants were not stopped from asserting their rights. Illinois courts have held that an insurer is stopped from raising a limitations defense where its actions during negotiations lull the policyholder into a false sense of security, causing it to delay the assertion of its rights. Defendants here understood that this is a complex claim with harm emerging over several years. They understood that their policyholders were not withdrawing their claim. So when defendants communicated with Naperville before and after the alleged statute of limitations expired, without even mentioning the statute of limitations, defendants were acknowledging that the policyholder's claim was still active and was not barred by any statute of limitations. In the months leading up to and when the statute of limitations was allegedly going to expire, Liberty Mutual requested additional documents corresponding with Naperville and scheduled an inspection of the loss. It never mentioned that a statute of limitations was about to expire. And then after the statute of limitations allegedly expired, Liberty Mutual conducted the inspection and requested additional documents. Liberty Mutual waited until its denial letter on March 4, 2020, long after it claims the statute of limitations expired, to inform Naperville of its internal statute of limitations defense. Liberty Mutual's actions before and after the internal statute of limitations had supposedly expired waived this defense and stopped Liberty Mutual from relying on it. Liberty Mutual also was stopped for another reason for raising its statute of limitations defense because it did not include it in its reservation of rights letter. The Illinois Supreme Court has held that the reservation of rights must specifically refer to the policy defense that may be asserted. And that's the standard mutual versus lay case. Illinois courts also hold that bare notice of a reservation of rights is insufficient. Liberty Mutual's reservation of rights letter included a long list of policy provisions that Liberty Mutual claimed precluded coverage, but it did not list the internal statute of limitations. Because the reservation of rights letter did not make specific reference to the policy defense, which ultimately may be asserted, Liberty Mutual is precluded from relying on the internal statute of limitations. Fireman's Fund also is a stop from asserting the internal statute of limitations defense. Fireman's communicated with his policy holders long after the alleged statute of limitations expired without mentioning the statute of limitations, implying that Naperville's claim was not barred by any statute of limitations. For example, on December 18th, 2019, nearly two months after it claims the statute of limitations expired, fireman's emailed Naperville regarding the claim. Fireman's did not assert or mention any possible internal statute of limitations in this correspondence. To the contrary, it expressly acknowledged that we did not fully disclaim coverage for this loss and went on to acknowledge that there is coverage for the ensuing water damage. Fireman's actions after the internal statute limitations allegedly expired waived this defense and stopped fireman's from relying on it. The trial court also aired regarding Naperville's notice when it provided notice of the loss to both insurers in May 2019 at the latest. In May 2019, Naperville put together the cumulative effect of rain damage over a long period Yes, your honor. Stop for a minute, Mr. Connor. Is everybody distracted by the noise in the background? Yes, a little bit. I did hear it, your honor. Yes. Do we know where it's coming from? I think it's the court itself and it's muted now. It wasn't before, so I think it's been fixed. Okay. All right. Thank you. I apologize, Mr. Connor. Go ahead. Thank you, your honor. In May 2019, Naperville put together the cumulative effect of rain damage over a long period of time and determined it should file an insurance claim. Naperville provided notice to the defendant's agent and thus the defendant's even earlier in 2019. Whether notice is sufficient is typically a factual determination that should not be made at the pleading stage, but even if this was the right time, defendant's motion is not well taken. The Illinois Supreme Court has identified five factors courts consider in making a fact-specific reasonable notice determination. The specific language of the policy's notice provision, the insured sophistication in commerce and insurance matters, the insured's awareness of an event which may trigger insurance coverage, the insured's diligence in ascertaining whether policy coverage is available, and the presence or absence of prejudice. These facts factors support reversing the trial court's dismissal. At a minimum, they raise issues of fact that cannot be adjudicated at this early time in the case. First, defendant's notice provisions do not provide a specific period for providing notice. Illinois courts interpret such provisions as requiring notice within a reasonable time. Illinois courts have held that longer notice periods than here were reasonable, even up to five years after the injury. Second, the standard used in determining an insured's sophistication is based on his experience not only in the world of commerce, but also insurance. In the Bergland case cited in Naperville's briefing, the policyholder, like Naperville, purchased insurance for his business and does not have, quote, any other experience or education in insurance to qualify him as a sophisticated insured. Naperville is in the hotel business and does not have education or experience in the insurance industry. Third and fourth, Naperville was not aware that an occurrence had taken place until they reported it to the insurers in 2019. Each time the hotel suffered water penetration, Naperville diligently investigated and addressed what they believed to be discrete events. It was not until 2019 that Naperville became aware of the true extent of the continuous damage and reported it to the insurers. Finally, defendants have suffered no prejudice. They did not describe, much less prove, how they have been prejudiced. Even if defendants had alleged specific prejudice, actual prejudice is a fact question not suitable for determination at the motion-to-dismiss stage. In sum, each of the notice factors shows Naperville's notice was reasonable. Because Naperville complied with both the internal statute of limitations and the notice provisions, Naperville respectfully requests that this court reverse the trial court's order dismissing Naperville's case and send the case back to the trial court for further proceedings. I'd like to reserve any extra time for rebuttal. Thank you, your honor. You have five minutes for rebuttal, Mr. Conner. Thank you very much. Are there any questions for Mr. Conner at this point? I have none. No. Okay, um, let's see. I have Mr. Shirl for seven and a half minutes. Mr. Shirley, thank you. Thank you. Thank you. I represent a Liberty Mutual Insurance Company, and if you recall from my briefs, we only insured this hotel from September 15, 2017 to October 31, 2017. It was added as an 47-day period. I think this is pretty simple. Judge Wheaton below during our oral argument said this was not a continuous loss, and this is not a continuous loss. She said there are certainly discrete incidents that happened that create the situation of water intrusion, but it's not continuous. And Justice Albrecht, I think, hit the point correctly. If you look at their second amended complaint, they have very specific dates where there was water damage and water intrusion. So focus on October, this is their 13B of their second amended complaint. On October 11, 2017 and October 14, 2017, NOAA recorded precipitation levels of 1.18 and 3.9 inches respectively in DuPage County. And then they plead from October 14, 2017 through October 17, 2017, so a period of three days, the hotel experienced water intrusion in the dining area, in the bar, in the hallways, in the stairwells, and in multiple rooms. So if you look at the policy language, that's when the physical damage occurred. And they have two years from that day to bring suit, and they didn't do it. So they specifically allege water damage in the dining from them. You don't have to be a lawyer. You don't have to be an insurance broker to know if you own a hotel and you got water coming in, in your dining room, in your hallways, in your rooms, you got to call an insurance person, got to call your insurance broker. You got to put them on notice. Like I said, you don't need to be a lawyer. You don't need to be an insurance person. If I had water coming in, in my kitchen, I wouldn't wait 19 months like they did to provide notice. So they filed suit and it's clearly too late. Council cites two out-of-state cases that don't apply here at all. First, they're obviously not Illinois cases. So let's look at the condominium complex and the policy covered collapse due to hidden decay, collapse due to hidden decay. So the question was this, the limitation period said that suit had to be brought within one year after the loss occurred. And the court said, when did the loss occurred? It's either the date of the actual collapse, right? Is one thing. So you actually see the damage or the date that the decay that poses a risk of collapse is no longer hidden. So either when you see the actual collapse, physical loss, or you see the hidden decay, that's when the period starts, okay? Our case is completely different. They had heavy rains and water intrusion in October, 2017. Those were specific dates. They knew the damage was there. They even admit in their brief that each time that there were these water events, they diligently investigated and addressed what they believed to be discrete events. That's page 26 of their brief. So they knew about the rains. They knew about the water from Wisconsin is different. That involved a home. From the time the home was completed, there were latent defects in that home that allowed water infiltration. The insured in that case first learned of water damage in October, 2010. They submitted a notice of claim in December, 2010, two months after they found the note and knew about the water damage, and they filed suit October, 2011 within the one-year period. So that case is different from our case, and it's not Illinois law in any event. Let's talk a little bit about the waiver and estoppel arguments. If you look at pages 9 and 10 of my brief, remember in the summer of 2019, the insured had a lawyer. It was not Mr. Conner. It was a different lawyer, Mr. Jeffrey Youngerman. They also had a claims advocate in the summer of 2019. So it's not like the insured was not represented in the summer of 2019. So keep that in mind. The first argument is waiver. I think their argument is we didn't specifically set out the suit limitation provision in our reservation of rights letter or every email or every letter that we saw, that we sent them or every email. The bottom line is this. We are not obligated to, there's no Illinois law or any law that I know of that says an insurance company is obligated in a reservation of rights letter or every email to keep reminding the insured, oh, by the way, this is a suit limitation provision. The phone craft case from Illinois that I cite, it states the insured cannot blame the insurance company for its failure to read the policy to discover the requirements for bringing suit. It is not the duty of the insurer to inform the insured of the duty. The only regulation I know of in Illinois that talks about suit limitation is section 919.80 of the Illinois administrative code. And that requires us to, when we deny coverage, to set out the number of days told. That's the only regulation I know of. And if the Illinois wanted, the state of Illinois wanted insurance companies to set forth the suit limitation provision in a reservation of rights letter, they would have said so. Very quickly on Estoppel, I know I have a minute. They claim that we conducted an investigation and asked for additional documents. Here's what happened. In September when the investigation took place, we still didn't know. We still didn't know when the suit limitation had expired. And also the additional documents we requested, we were waiting on their attorney to send us an expert report. That's all we were waiting on. Thank you. Thank you, Mr. Shirley. Mr. Fishman? I may have pleased the court. I'm Howard Fishman. I represent the other defendant at the Lee Fireman's Fund. This case was dismissed on the pleadings. The third amended complaint is the operative pleading as it respects my client. So it was the fourth attempt for the hotel to state a claim. And the allegations couldn't be clearer in the complaint, and it takes them out of coverage. And it's worth reading verbatim. Paragraph 10 of the third amended complaint. Since the hotel opened in July 2015, during and after rain events, rain penetrates the exterior walls, windows, and roof of the hotel. The rain penetration and resulting damages have continued through the years up to the present. As the Illinois Supreme Court has held in cases like Zurich versus Rainmark, damages can continue through and trigger several periods. Paragraph 11. These rain events caused damage to the hotel, including the exterior and interior of the hotel. And Mr. Conner concedes in this oral argument, as he must, that the loss here is cumulative. These rain events started in 2015. They continued unabated apparently. There was damage to the hotel's reputation. It was visible to hotel guests. And that's paragraph 14 of the third amended complaint. And yet during 2015, 2016, 2017, 2018, until May of 2019, they didn't provide notice to Fireman's Fund. Arguably, they provided notice a few months earlier to Mesereau, who they claim is our agent. We dispute that. But as the court well knows on a motion to dismiss, we will deem that true. That's still 41 months that went by. And what's critical in this case that distinguishes it from all of the other cases relied on by the hotel is it's not latent. This was readily apparent water damage that continued. It was direct damage to property. I think Justice McDade asked about that. That's the insuring agreement, direct loss or damage to property. That's physical. No question. The interpretation of a policy, the rules of construction are well established in Illinois. Insurance policy must be construed as a whole, giving effect to every provision. We cited Lavorsi for that proposition. We cited Central Illinois Light, both Supreme Court cases. The interpretation that's being urged on the court is it's not reasonable. I would say it's absurd, but it is not reasonable. It would lead to absurd results. Absurd results in the sense that they could sit on their rights during all of these ensuing years while water is continuing to infiltrate the hotel and say, well, we didn't have to tell you. We're just waiting for it to stop. That's not good policy. It's not what the insurance policy says, and it's not reasonable notice under the Lavorsi factors. Let me run through those really quick. He did recite the proper test that Lavorsi employs. Prompt notice is deemed reasonable, is construed as reasonable notice. Here we've got 41 months. I don't think that there can be a serious dispute that that is unreasonable as far as time is concerned. The insured sophistication in commerce and insurance, Mr. Shirley correctly brought up that there was a insurance coverage attorney that's at C2900-01 in the record and C5670V2. There's an affidavit from that lawyer in the record of this case. The third factor is their awareness of the event-triggering coverage. We covered that. It was visible remediation to the extent there was any remediation. Trash cans, visible leaks. Their diligence, you know, they say that their diligence is governed by quote actionable occurrence and quote test. There's no support for that in Illinois law. I don't know what it means. It's not in the policy. It's not under Illinois case law. In fact, it was directly, not that explicit language, but that argument was addressed by the Breckenridge case, which is 2019 U.S. District Lexus 233-220. I'm quoting from or paraphrasing from page 11 of that decision. Breckenridge, who was the policyholder there, argues that the central focus should be on a claim existed necessitating a claim for such coverage and did so after producing damage estimates and concluding that the extent of the damage merited submitting a claim. Court goes on to reject that and says that in order to make a subjective determination before deciding whether a claim is quote worth it constitutes a reasonably diligent determination of coverage, the court is not willing to endorse that proposition, that test. So the late notice here is apparent. There's certainly prejudice to Fireman's Fund. It was deprived of 41 months to investigate this loss and if it was covered to address the loss so it wouldn't exacerbate and cause additional property damage. And it was deprived of that opportunity and prejudice. Our alternative argument is on the two-year suit limitation. Mr. Conner incorrectly refers to that as an internal statute of limitations. That's not what it is. It is a contractual provision that's a condition proceeding to coverage. It was not met here. We have the same triggering event in July of 2015. Suit was filed five years and nine months later. April 26th of 21 was when this case was initiated. That is not even a close call on the two-year limitations period. That's not a reasonable construction. And just to support the the condition proceeding argument we cited Hoover and Fonecraft, I'm out of time. No, you have another minute. Oh okay, I have another minute. Actual knowledge. The Hoover and the Kramer cases stand for the proposition that actual knowledge triggers the suit limitation provision and that only makes common sense. The cases that Mr. Conner cites, aside from not being binding and aside from being factually distinguishable, there was no known loss that would have triggered the time limitation for providing reasonable notice or for complying with the suit limitation clause. For that reason, we ask that the trial court be affirmed in both respects. We make that argument in the alternative so either argument or both arguments would carry the day for this court to affirm. Thank you very much. Thank you, Mr. Fishman. Mr. Conner, any rebuttal? Yes, your honor. I have a few points to make on rebuttal. The overriding point is that the considerations here are the policy language that the insurers drafted and reasonableness. The only cases cited by any party interpreting this language, and I fully admit that they are out-of-state cases, but they are the only two cases in the whole country interpreting this language, and they both found that the statute of limitations did not begin to run until the conclusion of the loss. And these cases were handed down in 2001 for Panorama and 2014 for Straus. So they were before any of these five insurance policies at issue here were written. The insurers are well aware of this case law holding this. The only cases anywhere in the country interpreting this language. Are they based on the statutes or laws of the states that they cover? They are based on the internal statute of limitations language in each of those policies. Okay. In the Panorama and Straus cases, they are both internal statute of limitations provisions. And regarding whether this is a continuous loss or not, the specific dates of loss are listed in the complaint as examples only. They're not the only specific dates that there was rain or damage occurring during the policy period. It mentions explicitly in the complaint that they were examples only. Water intrusion damage is not instantaneous or harmful over time in every instance. For example, it could dry out and may not lead to damage. That is why it wasn't until 2019 that the policyholder was able to assess the total extent of the cumulative damage. Also, water intrusion itself is not damage or loss or direct physical loss. The damage loss or direct physical loss is the damage to the property, damage to the hotel, damage to property inside the hotel. It's not the actual water intrusion itself. So the fact that it might have occurred five different examples over five years, that is not the trigger of the statute of limitations or the notice provision. And also, regarding whether there's any Illinois law regarding including internal statute of limitations, the Illinois Supreme Court precedent holding that you must include any policy defense that you are going to assert to deny a claim in your reservation of rights letter, and Liberty Mutual did not do that. They provided a long list, multiple pages of policy defenses that they were going to assert or that they could assert, but they specifically did not mention the statute of limitations. It is also not just, it's not just not telling the policyholder about the statute limitations. It's also continuing to investigate the claim long after the statute of limitations has allegedly expired that tells the insurer that the statute of limitations does not apply here. If the insurer is continuing to investigate the claim, ask for additional details, come to the site to inspect the hotel to see if there is covered damage, and also sending communications saying that there is coverage for the claim after they have said that the statute of limitations has expired. And I'm also, regarding the 41 months, I'm not sure what that refers to. The defendant's agent listed the period of exposure through at least April 30, 2019, and notice was provided shortly thereafter in May 2019. So there's, it's not a 41-month delay. The cumulative effect of the loss was not determined until then, and that's when notice was provided. If there are no further questions, that is all I have for today. Thank you, Your Honor. Are there any further questions for Mr. Conner? I have none. None for me either. Okay, thank you, Mr. Conner. We thank the three of you for your arguments this afternoon. We'll take the matter under advisement, and we'll issue a written decision as quickly as possible.